**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DANIEL MAINES, an individual;<br>FIREARMS POLICY COALITION, INC.; and<br>NATIONAL RIFLE ASSOCIATION OF AMERICA,<br>Plaintiffs,<br><br>v.<br><br>KEVIN BETHEL, in his official capacity as Police Commissioner of the Police Department of Philadelphia, Pennsylvania; and LIEUTENANT COLONEL GEORGE L. BIVENS, in his official capacity as Commissioner of the Pennsylvania State Police,<br><br>Defendants. | Civil Action No.: 2:26-cv-08301 |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**OR, ALTERNATIVELY, SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

BACKGROUND ..... 2

A. Statutory and Regulatory Background ..... 2

B. Procedural History ..... 5

LEGAL STANDARD ..... 6

ARGUMENT ..... 7

I. Plaintiffs Will Prevail On The Merits Because Pennsylvania's 21-Year-Old Licensing Requirement Violates The Second Amendment ..... 7

- A. The Second Amendment's Plain Text Covers Plaintiffs' Conduct ..... 8
- B. Pennsylvania Cannot Show That Its Age Requirement Is Consistent With The Nation's Historical Tradition Of Firearms Regulation ..... 9
  - 1. The Supreme Court Has Provided Extensive Direction Governing Lower Courts' Consideration Of The Government's Effort To Meet Its Burden ..... 9
    - a. Historical Evidence At And Around The Founding Controls ..... 10
    - b. Establishing A Historical Tradition Requires Identifying A Widely Representative Regulatory Analogue ..... 11
    - c. Purported Analogues Must Be Relevantly Similar ..... 12
  - 2. There Is No Historical Tradition Of Regulation That Could Justify Pennsylvania's Age Requirement ..... 12

II. The Remaining Preliminary Injunction Factors Favor Plaintiffs ..... 15

III. The Court Should Waive Bond Or Require Only Nominal Security ..... 16

IV. The Court Should, Alternatively, Grant Summary Judgment For Plaintiffs ..... 16

CONCLUSION ..... 17

## TABLE OF AUTHORITIES

### Cases

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*,
183 F.4th 211 (3d Cir. 2026) .......... 11

*Borough of Palmyra Bd. of Educ. v. F.C. ex rel. R.C.*,
2 F. Supp. 2d 637 (D.N.J. 1998) .......... 16

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 7

*Daniels Health Scis., LLC v. Vascular Health Scis., LLC*,
710 F.3d 579 (5th Cir. 2013) .......... 7

*Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Pub. Safety*,
108 F.4th 194, 198 (3d Cir. 2024) .......... 15

*District of Columbia v. Heller*,
554 U.S. 570 (2008) .......... passim

*Doe v. U.S. Dep't of Homeland Sec.*,
No. 3:24-cv-259, 2025 WL 360534 (W.D. Pa. Jan. 31, 2025) .......... 15

*Elliott v. Kiesewetter*,
98 F.3d 47 (3d Cir. 1996) .......... 16

*Espinoza v. Mont. Dep't of Revenue*,
591 U.S. 464 (2020) .......... 10

*Heller v. District of Columbia*,
670 F.3d 1244 (D.C. Cir. 2011) .......... 10

*K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*,
710 F.3d 99 (3d Cir. 2013) .......... 15

*Kim v. Hanlon*,
99 F.4th 140 (3d Cir. 2024) .......... 15

*Knabe v. Boury Corp.*,
114 F.3d 407 (3d Cir. 1997) .......... 16

*Koons v. Att'y Gen.*,
156 F.4th 210 (3d Cir. 2025), *vacated, en banc granted*, 162 F.4th 100 (3d Cir. 2025) .......... 15

*Lara v. Comm'r Pennsylvania State Police*,
125 F.4th 428, 438 (3d Cir. 2025) .......... passim

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) .......... 7

*McCoy v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*,
140 F.4th 568 (4th Cir. 2025) .......... 14

*McDonald v. City of Chicago*,
561 U.S. 742 (2010) .......... 7

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,
597 U.S. 1 (2022) .......... passim

*Nat'l Rifle Ass'n v. Bondi*,
133 F.4th 1108 (11th Cir. 2025) .......... 14

*Nken v. Holder*,
556 U.S. 418 (2009)........................................................................................................ 7

*Open Communities All. v. Carson*,
286 F.Supp.3d 148 (D.D.C. 2017)................................................................................... 15

*Ramos v. Louisiana*,
590 U.S. 83 (2020)......................................................................................................... 11

*Reese v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*,
127 F.4th 583 (5th Cir. 2025) ..................................................................................... 2, 13

*Rocky Mountain Gun Owners v. Polis*,
121 F.4th 96 (10th Cir. 2024) ......................................................................................... 14

*SEC v. Chappell*,
107 F.4th 114 (3d Cir. 2024) .......................................................................................... 16

*Thomas v. Cumberland Cnty.*,
749 F.3d 217 (3d Cir. 2014) ....................................................................................... 7, 16

*Timbs v. Indiana*,
586 U.S. 146 (2019)....................................................................................................... 11

*United States v. Hemani*,
608 U.S. 772 (2026)......................................................................................................... 8

*United States v. Rahimi*,
602 U.S. 680 (2024)............................................................................................. 9, 11, 12

*Virginia v. Moore*,
553 U.S. 164 (2008)....................................................................................................... 11

*Winter v. Natural Res. Def. Council, Inc.*,
555 U.S. 7 (2008)............................................................................................................. 7

*Wolford v. Lopez*,
609 U.S. 185 (2026)........................................................................................ 8, 9, 11, 13

*Worth v. Jacobson*,
108 F.4th 677 (8th Cir. 2024) ................................................................................ 2, 13, 14

*Zambelli Fireworks Mfg. Co. v. Wood*,
592 F.3d 412 (3d Cir. 2010) .......................................................................................... 16

**Statutes**

11 Pa.C.S. § 201.................................................................................................................. 2

18 Pa.C.S. § 1103(3)............................................................................................................ 3

18 Pa.C.S. § 6106(a) ....................................................................................................... 2, 3

18 Pa.C.S. § 6106(a), (b)...................................................................................................... 4

18 Pa.C.S. § 6108................................................................................................................. 2

18 Pa.C.S. § 6109(b)....................................................................................................... 2, 3

18 Pa.C.S. § 6109(c) ............................................................................................................ 3

18 Pa.C.S. § 6109(d)(5) ....................................................................................................... 3

18 U.S.C. § 921(a)(26)......................................................................................................... 5

18 U.S.C. § 921(a)(27)......................................................................................................... 5

18 U.S.C. § 922(g)(1) .................................................................................................... 3
18 U.S.C. § 922(q)(2)(A) .................................................................................................. 1
18 U.S.C. § 922(q)(2)(A), (B)(ii) ...................................................................................... 5

**Other Authorities**

*Carrying Firearms in Pennsylvania: Who can apply for a Pennsylvania License to Carry?*, PA.gov ........................................................................................................................ 2, 3
*Firearms Annual Report 2024*, PA. STATE POLICE ........................................................ 3
*QuickFacts: Philadelphia city, Pennsylvania*, U.S. CENSUS BUREAU ............................... 2
Stockburger, *How many municipalities are in Pennsylvania?*, ABC27 ............................ 4

**Rules**

Fed. R. Civ. P. 56, advisory comm. notes (2009 Amendments) ........................................ 7
Fed. R. Civ. P. 56(a) ................................................................................................... 7, 16
Fed. R. Civ. P. 56(b) ........................................................................................................ 7

## INTRODUCTION

"[T]he Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 8 (2022). This right presumptively "belongs to all Americans," not "an unspecified subset." *District of Columbia v. Heller*, 554 U.S. 570, 580, 581 (2008); *see also Lara v. Comm'r Pa. State Police*, 125 F.4th 428, 435–36 (3d Cir. 2025), *cert. denied*, 146 S. Ct. 2812 (2026). On his eighteenth birthday, Daniel Maines became a legal adult for almost all purposes and certainly for the purpose of exercising his other constitutionally protected rights. He can vote, enter contracts, and get married. He can join the military to fight and die for his country. And as an adult, there are no parents or other legal guardians generally responsible for his care and protection. Yet the Pennsylvania laws challenged here prevent him from fully exercising his Second Amendment-protected rights on par with all other adult Pennsylvanians. This is true of all 18-20-year-old adults in Pennsylvania.

Pennsylvania's Uniform Firearms Act ("UFA") requires individuals such as Plaintiff Daniel Maines to possess a carry license to carry concealed or in one's vehicle. 18 Pa.C.S. § 6106(a). Carrying *at all* "in a city of the first class" (such as Philadelphia) is also prohibited without a license. *Id.* § 6108. And without a carry license, one cannot obtain an exemption from the general prohibition on carrying a firearm within 1,000 feet of a school imposed through the federal Gun-Free School Zones Act. 18 U.S.C. § 922(q)(2)(A). Pennsylvania residents aged 21 and over qualify for these licenses, but Pennsylvania's permitting regime forbids Pennsylvania's 18-to-20-year-olds from obtaining such licensure, thereby denying Plaintiff Maines and all similarly situated individuals their "general right to public carry" in Pennsylvania. *Bruen*, 597 U.S. at 33.

The Third Circuit has confirmed "that 18-to-20-year-olds are, like other subsets of the American public, presumptively among 'the people' to whom Second Amendment rights extend." *Lara v. Comm'r Pennsylvania State Police*, 125 F.4th 428, 438 (3d Cir. 2025). And there is no historical tradition that justifies treating such adults on discriminatory footing compared with

adults 21 years of age and older. *See id.* at 441–46 (striking down Pennsylvania law prohibiting 18-to-20-year-old adults from openly carrying firearms during a state of emergency); *Worth v. Jacobson*, 108 F.4th 677, 695–98 (8th Cir. 2024) (holding that Minnesota's 21-year-old age limit for carry licenses violated the Second Amendment); *Reese v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 127 F.4th 583, 595–600 (5th Cir. 2025) (holding unconstitutional the federal ban on selling handguns to 18-to-20-year-old adults).

Pennsylvania's regulatory scheme prohibiting 18-to-20-year-old adults from obtaining concealed handgun permits violates the Second and Fourteenth Amendments. The Court should enter a preliminary injunction enjoining Defendants (and all those under Defendants' supervision) from enforcing Pennsylvania's unconstitutional age requirement. Alternatively, especially given the state of the law in this Circuit, the Court should simply enter summary judgment in Plaintiffs' favor.

## BACKGROUND

### A. Statutory and Regulatory Background.

The Commonwealth of Pennsylvania makes it generally illegal to carry a firearm in a vehicle or concealed on one's person (except in one's own "place of abode or fixed place of business") "without a valid and lawfully issued license" pursuant to the UFA. 18 Pa.C.S. § 6106(a). And it is generally illegal to carry a firearm in any manner (concealed or open) "in a city of the first class," unless a person "is licensed to carry a firearm" or "exempt from licensing under section 6106(b)." *Id.* § 6108. A "city of the first class" is one with a population of one million or more. 11 Pa.C.S. § 201. Philadelphia constitutes a city of the first class, with a population of over 1.5 million. *See QuickFacts: Philadelphia city, Pennsylvania*, U.S. CENSUS BUREAU, census.gov/quickfacts/fact/table/philadelphiacitypennsylvania/PST045225.

To apply for a concealed carry license, one must submit an application to the Sheriff in the county of the applicant's residence (or the chief of police in the City of Philadelphia). 18 Pa.C.S. § 6109(b); *Carrying Firearms in Pennsylvania: Who can apply for a Pennsylvania License to Carry?*, PA.gov, https://perma.cc/7USX-SAME ("Submit applications to the sheriff of the county

where you live. If you live in a city of the first class (Philadelphia), submit applications to the chief of police.”). Applications are made on a uniform carry license application prescribed by the State Police. 18 Pa.C.S. § 6109(c) (“The application for a license to carry a firearm shall be uniform throughout this Commonwealth and shall be on a form prescribed by the Pennsylvania State Police. … Issuing authorities shall use only the application form prescribed by the Pennsylvania State Police.”). Sheriffs or local law enforcement must then clear license applicants through the Pennsylvania Instant Checks System (“PICS”)—the State Police’s background check system—prior to issuing a license. 18 Pa.C.S. § 6109(d)(5). “The [PICS] system is designed for use by licensed firearms dealers, county sheriffs, and chiefs of police of cities of the first class to ascertain an individual’s eligibility to obtain a license to carry firearms or purchase or transfer a firearm, in accordance with their statutory responsibilities.” *Firearms Annual Report 2024* at 3, PA. STATE POLICE, https://perma.cc/BP84-R9DM.

But Pennsylvania categorically denies carry licenses to all adults under 21: “An individual *who is 21 years of age or older* may apply to a sheriff for a license to carry a firearm concealed on or about his person or in a vehicle within this Commonwealth.” 18 Pa.C.S. § 6109(b) (emphasis added); *see also Carrying Firearms in Pennsylvania: Who can apply for a Pennsylvania License to Carry?*, *supra* (“A person who is 21 years of age or older may apply for a License to Carry Firearms.”). This denial has a real and practical impact on the constitutionally protected right to carry a firearm in public for self-defense.

First, ineligibility for a carry license makes adults under 21 categorically ineligible to carry a firearm concealed for self-defense and opens them to criminal liability if they do. “[A]ny person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license … commits a felony of the third degree.” 18 Pa.C.S. § 6106(a). A conviction is punishable by up to seven years’ imprisonment. *Id.* § 1103(3). A conviction also renders the offender a prohibited person under federal law, who is thereafter unable to lawfully purchase, possess, or utilize firearms and ammunition. 18 U.S.C. § 922(g)(1).

Furthermore, while the Commonwealth does not generally bar 18-to-20-year-olds from carrying firearms openly in public, the practical ability to exercise that right is severely circumscribed by other aspects of Pennsylvania and federal law. The restrictions on carrying in cities of the first class mean that 18-to-20-year-olds generally cannot carry in Philadelphia. At 134.10 square miles, Philadelphia is the largest city in the Commonwealth. Stockburger, *How many municipalities are in Pennsylvania?*, ABC27, https://perma.cc/DMF4-2FY5. More crimes occur in Philadelphia than in any other city in Pennsylvania. In 2025, over 13,000 violent crimes were committed in Philadelphia, accounting for nearly 44% of all violent crime in Pennsylvania.[1] The Carry Ban thus renders Plaintiffs defenseless in the Commonwealth's most violent city.

The restrictions on transporting firearms in vehicles make it functionally impossible for 18-to-20-year-olds to carry beyond the vicinity immediately surrounding their home. Individuals without a carry license generally can transport a firearm in a vehicle in only highly specific circumstances—and even then only if the firearm is locked and unloaded, and thus useless "in case of confrontation," *Heller*, 554 U.S. at 592—such as to or from a place of repair or for firearms training, *see* 18 Pa.C.S. § 6106(a), (b). This means that 18-to-20-year-olds generally cannot lawfully exercise their right to armed self-defense while in a vehicle nor in any places where they travel with a vehicle—given the few places they can transport a firearm to and the requirement that the firearm be stored locked and unloaded. Functionally, this means that Plaintiff Maines and similarly situated individuals, including Plaintiff FPC's and NRA's 18-20-year-old Pennsylvania members, cannot have a loaded or unloaded firearm with them while traveling to any grocery store, convenience store, mall, restaurant, or any number of other locations in the State that individuals visit on a daily basis. Additionally, even while transporting a firearm (locked and unloaded) to one of the "authorized" locations under State law, Plaintiff Maines and similarly situated individuals, including Plaintiff FPC's and NRA's 18-20-year-old Pennsylvania members, are prohibited from

---

[1] Based on data collected in the FBI's Crime Data Explorer, calculated by comparing the aggregate violent-crime numbers for all agencies in Philadelphia County (reporting 13,047 violent crimes in 2025) against the total for Pennsylvania as a whole (29,831). FBI Crime Data Explorer, Data Discovery Tool, online at https://cde.ucr.cjis.gov/.

stopping for gas, food, a bathroom break, or even from going directly from one exempt location to another.

Federal law further bans possession of firearms within 1,000 feet of school grounds unless (among other exceptions) the individual possesses a concealed-carry license from the state in which the school is located. 18 U.S.C. §§ 921(a)(26), 922(q)(2)(A), (B)(ii). These 1,000-foot gun-free zones emanate from each and every school in the State,[2] making it impossible for those without carry permits to lawfully carry a firearm in the State to, through, and from any number of destinations. This prohibition includes merely passing through one of these zones. Many areas have many schools in close proximity to one another, creating overlapping gun-free zones such that 18-to-20-year-old adults effectively have no opportunity to carry handguns for their self-defense. By categorically denying carry licenses to adults under 21, Pennsylvania denies them the licensing exception under federal law, effectively prohibiting carry in many areas within the State.

**B. Procedural History.**

Plaintiff Daniel Maines is a law-abiding, responsible individual who is not prohibited under state or federal law from acquiring or possessing firearms or ammunition. Plaintiff Maines is under 21 years of age and lives in Philadelphia, Pennsylvania. Plaintiff Maines wants to apply for a carry license issued by the State of Pennsylvania and would do so if Pennsylvania permitted him to. Plaintiff Maines, however, is prohibited from applying for a Pennsylvania carry license because he is under 21 years of age. Plaintiff Maines has refrained from carrying a firearm in public for self-defense in Pennsylvania because he is not permitted to obtain a Pennsylvania concealed handgun permit. Apart from the age requirement, Plaintiff Maines satisfies all criteria for a Pennsylvania concealed handgun permit. Maines Decl., ¶ 3. Plaintiff Maines is a member of Plaintiffs Firearms Policy Coalition, Inc. ("FPC") and National Rifle Association of America ("NRA"). Maines Decl., ¶ 4; Combs Decl., ¶ 5; Commerford Decl., ¶ 4.

[2] "School" is defined in pertinent part as "a school which provides elementary or secondary education, as determined under State law." 18 U.S.C. § 921(a)(27).

FPC is a nonprofit organization that seeks to protect, defend, and advance the People's rights, especially but not limited to the inalienable, fundamental, and individual right to keep and bear arms and protect the means by which individuals may exercise the right to carry and use firearms. Combs Decl., ¶ 4. FPC brings this lawsuit on behalf of its members, including Plaintiff Maines and all other similarly situated 18-20 year old Pennsylvania residents, who are adversely and directly harmed by Defendant's enforcement of the laws, regulations, policies, practices, and customs challenged herein. *Id.*, ¶ 5. But for Defendant's enforcement of the laws and regulations challenged herein, FPC's members who are between 18 and 20 years of age and who are legally eligible to possess and acquire firearms would be allowed to apply for a Pennsylvania concealed handgun permit. *Id.*

NRA is a nonprofit organization and is America's oldest civil rights organization and a foremost defender of Second Amendment rights. Commerford Decl., ¶ 3. NRA is America's leading provider of firearms marksmanship and safety training for both civilians and law enforcement. *Id.* Plaintiff NRA has millions of members across the nation, including in Pennsylvania. *Id.* NRA brings this lawsuit on behalf of its members, including Plaintiff Maines and all other similarly situated 18-20 year old Pennsylvania residents, who are adversely and directly harmed by Defendant's enforcement of the laws, regulations, policies, practices, and customs challenged herein. *Id.*, ¶ 4. But for Defendant's enforcement of the laws and regulations challenged herein, NRA's members who are between 18 and 20 years of age and who are legally eligible to possess and acquire firearms would be allowed to apply for a Pennsylvania concealed handgun permit. *Id.*

Plaintiffs filed this lawsuit on October 29, 2026, alleging that Pennsylvania's age requirement violates the Second Amendment.

## LEGAL STANDARD

To obtain a preliminary injunction, a party must demonstrate (1) a likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) that the balance of equities favors the movant; and (4) that the injunction is in the public interest. *See Osorio-Martinez v. Att'y Gen.*, 893

F.3d 153, 178 (3d Cir. 2018); *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "The first two factors … are the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009). If they are met, "the court balances them along with [the] two others." *KalshiEX, LLC v. Flaherty*, 172 F.4th 220, 225 (3d Cir. 2026). The third and fourth factors (balance of equities and public interest) "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009); *see KalshiEX*, 172 F.4th at 225.

Federal Rule of Civil Procedure 56 "allows a party to move for summary judgment at any time, even as early as the commencement of the action." Fed. R. Civ. P. 56, advisory comm. notes (2009 Amendments); *see* Fed. R. Civ. P. 56(b). Summary judgment is proper where, as here, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). "Rule 56 does not require the moving party to *negate* the elements of the nonmoving party's case … ." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). The movant may meet its burden by pointing out the absence of evidence supporting the nonmovant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

## ARGUMENT

### I. Plaintiffs Will Prevail On The Merits Because Pennsylvania's 21-Year-Old Licensing Requirement Violates The Second Amendment.

The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Heller*, 554 U.S. at 592. And it "elevates above all other interests"—including Defendants'—"the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 635. The Second Amendment applies to the States through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742 (2010).

To determine whether a firearm regulation is constitutional under *Bruen*, the analysis begins with whether the Second Amendment's plain text covers an individual's conduct; if so, the Constitution presumptively protects that conduct. *See Bruen*, 597 U.S. at 22–24. If that requirement is satisfied, "[t]he government must then justify its regulation by demonstrating that

it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24. In other words, it is Pennsylvania's burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19 (cleaned up); *see also id.* at 60 ("[W]e are not obliged to sift the historical materials for evidence to sustain [the State's] statute. That is respondents' burden.").

When considering a government's proffered historical analogues, courts must first look at "the number of jurisdictions in which they were adopted" and "the extent to which they were well-accepted." *Wolford v. Lopez*, 609 U.S. 185, 196 (2026). And because the Second Amendment analysis "seek[s] the general understanding of that codified right," it follows that "[a]n outlier legal rule adopted in a few locales is not enough." *Id.* at 207. A historical analogue must be "widespread, well-known, and widely accepted," *id.* at 211, but even then, it must also be sufficiently tailored to the modern conduct the government seeks to regulate: The analogue must be "relevantly similar" to a modern law based on "how" and "why" they restrict Second Amendment-protected conduct. *Id.* at 196; *see Bruen*, 597 U.S. at 29. "The more closely a contemporary law mirrors a well-established historical analogue in purpose and operation, the more likely it is to be upheld. Conversely, the more a modern law diverges from traditional laws in purpose and operation, the less likely it is to survive review." *United States v. Hemani*, 608 U.S. 772, 780–81 (2026). *Hemani* provides a case in point. The Court found that "the government's analogy fails" because "the historical laws on which it relies targeted different kinds of people, did so for different reasons, and operated in different ways." *Id.* at 795.

Pennsylvania cannot meet its burden here.

**A. The Second Amendment's Plain Text Covers Plaintiffs' Conduct.**

The first part of the *Bruen* analysis is straightforward. The Third Circuit has confirmed "that 18-to-20-year-olds are, like other subsets of the American public, presumptively among 'the people' to whom Second Amendment rights extend." *Lara*, 125 F.4th at 438. And Plaintiffs' proposed conduct—using arms for self-defense—falls comfortably within "the *central component* of the [Second Amendment] right." *Heller*, 554 U.S. at 599. As *Bruen* and *Wolford* have already

established, this includes carrying arms publicly for self-defense. *Bruen*, 597 U.S. at 31–33; *Wolford*, 609 U.S. at 197. Therefore, the Second Amendment "presumptively protects" Plaintiffs' right to carry firearms in public in Pennsylvania. *Bruen*, 597 U.S. at 24; *see also Lara*, 125 F.4th at 436–38. Stated another way, Pennsylvania's regime is "presumptively unconstitutional." *Wolford*, 609 U.S. at 196.

### B. Pennsylvania Cannot Show That Its Age Requirement Is Consistent With The Nation's Historical Tradition Of Firearms Regulation.

Under *Bruen*, the burden now shifts to Pennsylvania. It must show that its age requirement is "consistent with this Nation's historical tradition of firearm regulation." 597 U.S. at 34. "[W]hen the Government regulates arms-bearing conduct, as when the Government regulates other constitutional rights, it bears the burden to 'justify its regulation.'" *United States v. Rahimi*, 602 U.S. 680, 691 (2024) (quoting *Bruen*, 597 U.S. at 24). And it must do so by offering persuasive legal history. *See Bruen*, 597 U.S. at 25; *id.* at 25 n.6 (courts "decide a case based on the historical record compiled by the parties"); *Hemani*, 608 U.S. at 783 (similar). The Supreme Court and Third Circuit have confirmed that it cannot do so: *Bruen* was clear that the Second Amendment protects "a general right to public carry," 597 U.S. at 33, and the Third Circuit has observed no "founding-era statute imposing restrictions on the freedom of 18-to-20-year-olds to carry guns." *Lara*, 125 F.4th at 444. *Lara* therefore decides the historical question. But if the Court decides to reconsider the historical record, as explained below, Pennsylvania still cannot show that its restriction on the rights of 18-to-20-year-olds to carry firearms for self-defense is consistent with our Nation's historical tradition.

#### 1. The Supreme Court Has Provided Extensive Direction Governing Lower Courts' Consideration Of The Government's Effort To Meet Its Burden.

Under Supreme Court precedent, three methodological considerations must guide Defendants' presentation (and the Court's consideration) of their historical evidence.

### a. Historical Evidence At And Around The Founding Controls.

First, any proffered historical analogue must be from at or around the Founding, centering on 1791, when the Second Amendment was ratified. *See Bruen*, 597 U.S. at 34–35.

The meaning of the Second Amendment was fixed at the time it was adopted. The closer in time both before and after 1791 a historical law is, the more probative it is of that meaning. This is because "[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them." *Heller*, 554 U.S. at 634–35; *see also Bruen*, 597 U.S. at 37. Even if the text was later incorporated against the states through the Fourteenth Amendment, it is the 1791 understanding that is "applicable to [both] the Federal Government and States." *Lara*, 125 F.4th at 440. As the Third Circuit has recognized, therefore, "the constitutional right to keep and bear arms should be understood according to its public meaning in 1791." *Id.* at 441.

Because the Founding is the proper period for ascertaining the original meaning of the Second Amendment, *Bruen* also stressed that courts "must … guard against giving postenactment history more weight than it can rightly bear." 597 U.S. at 35. So while it is *permissible* for courts to consider post-Founding-Era historical regulations, that review is limited to determining whether such regulations *confirm* a Founding Era tradition. *Id.* at 36–37. Put simply, "post-ratification adoption or acceptance of laws that are *inconsistent* with the original meaning of the constitutional text obviously cannot overcome or alter that text." *Id.* at 36 (quoting *Heller v. District of Columbia*, 670 F.3d 1244, 1274 n.6 (D.C. Cir. 2011) (Kavanaugh, J., dissenting) (emphasis in original), and citing *Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464 (2020)). As the Third Circuit has explained, "laws enacted in the late-19th century 'do not provide as much insight into' the original meaning of the right to keep and bear arms as do earlier sources." *Lara*, 125 F.4th at 441 (citation omitted).

*Bruen* thus reaffirmed the Court's practice of focusing on the Founding Era when analyzing other enumerated rights. *See, e.g.*, *Espinoza*, 591 U.S. at 482 (finding unpersuasive "more than 30" provisions of state law from the "second half of the 19th Century" because they were not grounded in Founding-era practices regarding the Free Exercise Clause); *Ramos v. Louisiana*, 590

U.S. 83, 90–91 (2020) (discussing history of unanimous jury right by referencing "backdrop" of Bill of Rights' ratification in 1791); *Timbs v. Indiana*, 586 U.S. 146, 152 (2019) (discussing "colonial-era provisions" and "constitutions of eight States" when analyzing Eighth Amendment excessive fines clause); *Virginia v. Moore*, 553 U.S. 164, 168 (2008) ("[w]e look to the statutes and common law of the founding era to determine [Fourth Amendment] norms").

**b. Establishing A Historical Tradition Requires Identifying A Widely Representative Regulatory Analogue.**

Second, *Bruen* held that forming a historical tradition requires proof of representative, relevantly similar analogues. As *Rahimi* explained, such historical laws must evidence the "principles that underpin our regulatory tradition" and that "underl[ie] the Second Amendment." 602 U.S. at 692. Analogues are representative, therefore, if they are broadly applicable and widely accepted. But a handful of state laws that are unconnected, in principle, to earlier or later enactments is not a "historical tradition" that informs the original public meaning of the right at the Founding. Thus, historical analogues must be "well-established and representative," not "outliers." *Bruen*, 597 U.S. at 30. "[I]solated examples of [regulation] that 'contradict[] the overwhelming weight of other evidence regarding the right to keep and bear arms for defense,'" cannot be given weight. *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*, 183 F.4th 211, 244 n.40 (3d Cir. 2026) ("ANJRPC"). *Wolford* reaffirmed that historical analogues must be "widespread, well-known, and widely accepted," 609 U.S. at 211, and therefore "[a]n outlier legal rule adopted in a few locales is not enough," *id.* at 207. In *Bruen*, the Supreme Court rejected a set of three regulations as insufficient "to show a tradition of public-carry regulation." 597 U.S. at 46. Similarly, laws in the territories or discrete localized jurisdictions have limited utility in the analogical inquiry. *Bruen* explained that territorial laws are afforded "little weight" because they were "localized," "rarely subject to judicial scrutiny," and "short lived." *Bruen*, 597 U.S. at 67–69.

### c. Purported Analogues Must Be Relevantly Similar.

Third, any analogues must be "relevantly similar" based on "how and why [they] burden a law-abiding citizen's right to armed self-defense." *Bruen*, 597 U.S. at 29. This means that the modern regulation must impose a "comparable burden on the right of armed self-defense" as the historical regulation, and for a similar reason. *Id*. Analyzing this relevant similarity yields, under *Rahimi*, the sort of "principles" that are applied to assess a modern enactment. 602 U.S. at 692. Accordingly, Founding-Era laws arising in different contexts, or for different reasons, are inapt comparators to a modern law since they are not motivated by the same underlying principles.

Consider the approach in *Rahimi*: when directing courts to consider "the principles that underpin our regulatory tradition," the Court offered direction on determining the right level of generality for extracting those principles. *Id.* On the one hand, courts need not identify a "dead ringer" or "historical twin" to the challenged law. *Id.* But on the other, "a court must be careful not to read a principle at such a high level of generality that it waters down the right." *Id.* at 740 (Barrett, J., concurring).

For example, the *Rahimi* Court examined surety and going-armed laws and concluded that they stood for the principle that "[w]hen an individual poses a clear threat of physical violence to another" (justification), "the threatening individual may be disarmed" (burden). 602 U.S. at 698. The "principle," therefore, must satisfy both factors. Any purported principle that disregards the "how" or the "why"—or both—is taken at too high a level of generality. *See id.* at 692 (a law would be incompatible with the Second Amendment if it imposes a more severe burden, even if it shares a "permissible reason").

### 2. There Is No Historical Tradition Of Regulation That Could Justify Pennsylvania's Age Requirement.

Defendants cannot meet their burden of showing that the age requirement "is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S., at 24. There is no well-established and representative historical tradition of restricting the ability to bear arms for law-abiding, responsible 18-to-20-year-old adults. *See Lara*, 125 F.4th at 441–45 (concluding that

"Pennsylvania's restriction on 18-to-20-year-olds' Second Amendment rights is [not] consistent with the principles that underpin founding-era firearm regulations"); *Worth*, 108 F.4th at 695–98 (similar); *Reese*, 127 F.4th at 595–600 (similar).

When reviewing the impact of the age requirement, the Court must bear in mind what it "means in practice," *Wolford*, 609 U.S. at 202, because of its intersection with Pennsylvania's carry and transportation laws, "city of the first class" rule, and Section 922(q). Much like Hawaii's "default rule," which effectively prohibited carry in "many places that people routinely visit in the course of their daily routines," *id.* at 190–91, preventing 18-to-20-year-old adults from securing a carry permit severely burdens their ability to carry arms for self-defense—concealed, in their vehicle, in dangerous cities like Philadelphia, or anywhere within the overlapping web of 1,000-foot buffers emanating from each school zone.

Turning to the historical record itself, the Third Circuit has already addressed the relevant history. In *Lara*, the court examined a range of historical laws from the Founding through the late-19th century and rejected each as "fall[ing] conspicuously short" of forming an analogous tradition. 125 F.4th at 443. The State relied primarily "on mid-to-late nineteenth century" laws restricting the rights of those under 21. *Id.* at 441–42 & n.20. From the Founding Era, the State offered a solitary 1721 statute prohibiting the carrying of a gun on any "inclosed lands" owned by another. *Id.* at 442.

The court began by rightly dismissing the later nineteenth century laws as coming too late in time. *Id.* at 441–42. It then observed that the 1721 statute was aimed at trespassing while hunting, and did not even single out 18-to-20-year-olds, so was not analogous. *Id.* at 443. The court contrasted this sparse record with the Second Militia Act, passed five months after the Second Amendment was ratified, which *required* all able-bodied men over the age of 18 to be armed and enroll in the militia. *Id.* at 443–44. Ultimately, the court concluded that the law targeting 18-to-20-year-olds was inconsistent with the principles underlying our regulatory traditions. *Id.* at 445.

Some other circuits have considered similar traditions and likewise rejected them in the context of 18-to-20 regulations.[3] For example, the Fifth Circuit examined, and ultimately rejected: (1) public university resolutions restricting firearm possession by students, because they were narrow and based on *in loco parentis* authority; (2) militia regulations requiring parents' consent for minors to enroll and parents to furnish firearms for young men's militia duty, because these regulations actually illustrate an *expectation* that young adults would be armed; and (3) a South Carolina treatise discussing how minors were ineligible to be constables, because this was a narrow requirement irrelevant to the public at large. *Reese*, 127 F.4th at 596–99. In other words, none of these sufficed to form a representative historical tradition.

The Eighth Circuit similarly held Minnesota's 21-year-old permit requirement unconstitutional, distinguishing militia laws and university rules on nearly identical grounds as *Reese*. *Worth*, 108 F.4th at 695–96. It also rejected Founding-Era municipal ordinances banning firearm discharge within cities as insufficiently analogous to carry regulations. *Id.* at 696. Turning to Reconstruction Era sources, the court noted that they were likely entitled to little weight, but addressed them anyway. *Id.* Some laws prohibited only *concealed* carry or the types of weapons that could be easily concealed, and others criminalized only the *sale* of firearms to minors. *Id.* at 697. These burdens were too dissimilar to justify Minnesota's requirement that carry license applicants be at least 21 years old. *Id.* at 697–98.

In sum, no historical tradition justifies Pennsylvania's restriction on the Second Amendment-protected rights of 18-to-20-year-old adults.

* * *

Accordingly, prohibiting 18-to-20-year-old adults from obtaining a carry license violates the Second Amendment.

[3] *But see McCoy v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 140 F.4th 568, 575 (4th Cir. 2025) (finding prohibition on sale of handguns to adults under 21 supported by historical tradition); *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 119–20 (10th Cir. 2024) (upholding 18-to-20 law at *Bruen* step one); *Nat'l Rifle Ass'n v. Bondi*, 133 F.4th 1108, 1122 (11th Cir. 2025) (en banc) (Florida 18-to-20 law consistent with regulatory tradition on sales to minors).

## II. The Remaining Preliminary Injunction Factors Favor Plaintiffs.

Each of the remaining factors tilts decisively in Plaintiffs' favor:

***Irreparable Harm.*** The harm here is clear and irreparable: Individual Plaintiffs and all similarly situated 18-to-20-year-olds are broadly restricted from exercising the "general right to publicly carry arms for self-defense" guaranteed by the Second Amendment. *Bruen*, 597 U.S. at 31. This is not a situation where a law limits law-abiding citizens' access to *some* arms or avenues for carrying. *See Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Pub. Safety*, 108 F.4th 194, 198, 204–05 (3d Cir. 2024) (concluding challengers' declarations that they wished to obtain "assault weapons" and "large-capacity magazines" did not alone establish irreparable harm); *Koons v. Att'y Gen.*, 156 F.4th 210, 273 (3d Cir. 2025) (contrasting the irreparable harm of restrictions that deprive the right to carry for self-defense with restrictions that do not "make it overly difficult … to obtain guns"), *vacated, en banc granted*, 162 F.4th 100 (3d Cir. 2025). Instead, Plaintiff Maines and all similarly-situated individuals, including FPC's and NRA's 18-to-20-year-old members, are categorically prohibited from obtaining a carry license, rendering it impossible for them to publicly carry for self-defense in areas such as Philadelphia. The denial of this Second Amendment-protected right has irreparable—and possibly lethal—consequences.

***Balance of Equities / Public Interest.*** The two merged factors weigh in Plaintiffs' favor. "[R]emedying an unconstitutional practice is always in the public interest." *Kim v. Hanlon*, 99 F.4th 140, 160 (3d Cir. 2024); *see also Doe v. U.S. Dep't of Homeland Sec.*, No. 3:24-cv-259, 2025 WL 360534, at *10 (W.D. Pa. Jan. 31, 2025) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (citation omitted)). Conversely, because "the enforcement of an unconstitutional law vindicates no public interest," *K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 114 (3d Cir. 2013), Pennsylvania "cannot suffer harm from an injunction that merely ends an unlawful practice," *Open Communities All. v. Carson*, 286 F.Supp.3d 148, 179 (D.D.C. 2017) (cleaned up). Thus, "if a plaintiff demonstrates both likelihood of success on the merits and irreparable injury, it almost always will be the case that the public

interest will favor the plaintiff." *SEC v. Chappell*, 107 F.4th 114, 139 (3d Cir. 2024) (citation omitted).

In short, the *Winter* factors unquestionably favor granting a preliminary injunction to preserve Pennsylvanians' Second Amendment-protected rights.

**III. The Court Should Waive Bond Or Require Only Nominal Security.**

Because this is a "noncommercial case" and Defendants will not suffer monetary hardship and this matter involves a constitutional violation and the public interest, the Court should either waive Rule 65(c)'s bond requirement or impose only a nominal bond. *See Elliott v. Kiesewetter*, 98 F.3d 47, 59–60 (3d Cir. 1996) (in "noncommercial cases," where a balance of the equities favors the party seeking the injunction, "a district court has the discretion to waive the Rule 65(c) bond requirement"); *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 426 (3d Cir. 2010) (holding that, "where the nature of the action necessarily precludes any monetary harm to the defendant," district courts have "discretion under Rule 65(c) to waive a bond requirement"); *Borough of Palmyra Bd. of Educ. v. F.C. ex rel. R.C.*, 2 F. Supp. 2d 637, 646 (D.N.J. 1998) ("The court should also consider whether the applicant seeks to enforce a federal right and, if so, whether imposing the bond requirement would unduly interfere with that right.").

**IV. The Court Should, Alternatively, Grant Summary Judgment For Plaintiffs.**

Alternatively, this Court should enter summary judgment for Plaintiffs because "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Thomas*, 749 F.3d at 222 (quoting Fed. R. Civ. P. 56(a)). To avoid summary judgment, Defendants must make "a showing sufficient to establish the existence of [every] element essential to [their] case, and on which [they] will bear the burden of proof at trial." *Knabe v. Boury Corp.*, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citation omitted). As shown above, the Commonwealth cannot meet its burden to justify the 21-year-old permitting age requirement under the *Bruen* standard. This is especially true in this matter, where binding Circuit precedent mandates this case be decided in Plaintiffs' favor. Summary judgment is therefore warranted as a matter of law.

## CONCLUSION

For the reasons above, the Court should enter a preliminary injunction enjoining the enforcement of Pennsylvania's ban on 18-to-20-year-old adults obtaining a carry license set forth in 18 Pa.C.S. § 6109(b). Alternatively, the Court should enter summary judgment in Plaintiffs' favor.

Dated: November 2, 2026

Respectfully Submitted,

/s/ Bradley A. Benbrook
Bradley A. Benbrook*
Stephen M. Duvernay*
Jamie G. McWilliam*
BENBROOK LAW GROUP, P.C.
701 University Avenue, Suite 106
Sacramento, California 95825
Telephone: (916) 447-4900
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com
jamie@benbrooklawgroup.com

/s/ Bradley P. Lehman
Bradley P. Lehman
WHITEFORD, TAYLOR & PRESTON, LLC
600 North King Street, Suite 300
Wilmington, DE 19801
(302) 353-4144
blehman@whitefordlaw.com

*Attorneys for Plaintiffs*

**Pro hac vice application forthcoming*